STATE OF CONNECTICUT *v.* RICHARD CROUCH
(AC 27903)

McLachlan, Harper and Mihalakos, Js.

Argued October 19, 2007—officially released February 12, 2008

*Martin Zeldis*, public defender, for the appellant (defendant).

*Melissa L. Streeto*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, and *David R. Shannon*, assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Richard Crouch, appeals from the trial court's judgment granting the state's motion to modify the conditions of his probation. The defendant claims that the court improperly allowed a special condition of probation to be added that was in violation of the terms of the plea agreement and in violation of his constitutional right to due process. We affirm the judgment of the trial court.

In April, 2002, the defendant pleaded guilty under the *Alford* doctrine[1] to injury or risk of injury to, or impairing morals of, children in violation of General

---

[1] *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). An *Alford* plea allows a defendant to enter a plea containing protestations of innocence while voluntarily, knowingly and understandingly consenting to the imposition of a prison sentence.

Statutes § 53-21 (a) (1).[2] At the same time, the defendant admitted violating the terms of probation that had been imposed for a 1997 conviction of risk of injury to children. See General Statutes § 53a-32.[3] As a result of plea negotiations, the defendant was to serve four years incarceration for violating probation. For the charge of risk of injury to a child, he would receive a five year suspended sentence with five years of probation, to be served consecutively to the sentence on the violation of probation. Additionally, the state recommended the following special conditions of probation: substance abuse evaluation and treatment as deemed necessary, sex offender evaluation and treatment as deemed necessary, that the defendant stay away from United Methodist Church in Newtown and that he make no contact with the victim or the victim's family.[4] Accordingly, the court sentenced the defendant to four years of incarceration for violating probation and five years of incarceration for risk of injury to a child, execution of that sentence suspended after four years of incarceration. Thereafter, the defendant was to be placed on probation

---

[2] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

[3] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation . . . ."

[4] In 1997, the defendant pleaded guilty to risk of injury to a child for exposing his genitals and masturbating in public in the presence of three children. The underlying case in this appeal dates back to December, 2001, when the defendant, while on probation for the 1997 case, approached a child in the parking lot of United Methodist Church in Newtown. On the basis of his conduct toward the child, the state charged him with risk of injury to a child and violation of probation, for which the defendant pleaded guilty under the *Alford* doctrine.

for five years *"with the condition that [he] submit to any psychiatric or psychological evaluation that the department of adult probation deems appropriate and that [he] submit to any treatment that may be indicated as a result of that evaluation.* Further condition will be that [the defendant] submit to a substance abuse evaluation treatment and testing as is deemed appropriate by the [office] of adult probation." (Emphasis added.) All of the foregoing conditions were explicitly recited by the court. In addition, the court expressly acknowledged that the defendant would not have to comply with sex offender registration.[5]

The defendant was released from custody and began his probation on November 30, 2005. His probation officer, David Carter, initiated proceedings in December, 2005, to modify the conditions to include sex offender evaluation and treatment if necessary. On February 14, 2006, Carter formally filed a motion for modification of probation, and a hearing was held on May 22, 2006. The court granted the state's motion after concluding, in a memorandum of decision, that the modification of the conditions of probation was reasonably related to the defendant's rehabilitation and to the charge for which he had been convicted and sentenced.

"Probation is the product of statute. . . . Statutes authorizing probation, while setting parameters for

[5] Although the transcript of the defendant's plea canvass and sentencing discloses the court's express finding regarding sex offender registration, it is silent as to the issue of sex offender evaluation and treatment. The following colloquy took place:

"The Court: And there's no condition of registration?

"The Court: What was the agreement on that, [counsel]?

"[Defense Counsel]: No. There was no condition of registration.

"[The Prosecutor]: Well, I don't see that here.

"[Defense Counsel]: That was specifically mentioned, that we—

"The Court: Right.

"[The Prosecutor]: Right.

"The Court: It was discussed."

doing so, have been very often construed to give the court broad discretion in imposing conditions." (Citation omitted.) *State* v. *Smith*, 207 Conn. 152, 167, 540 A.2d 679 (1988).[6] "On appeal, we review whether the trial court abused its statutory discretion in imposing a condition of probation." *State* v. *Graham*, 33 Conn. App. 432, 447, 636 A.2d 852, cert. denied, 229 Conn. 906, 640 A.2d 117 (1994). "In reviewing the issue of discretion, we do so according it every reasonable presumption in favor of the trial court's ruling. . . . A defendant who seeks to reverse the exercise of judicial discretion assumes a heavy burden." (Citation omitted.) *State* v. *Smith*, supra, 167.

"[T]he purpose of probation is to provide a period of grace in order to aid the rehabilitation of a penitent offender; to take advantage of an opportunity for reformation which actual service of the suspended sentence might make less probable." (Internal quotation marks omitted.) *State* v. *Smith*, supra, 207 Conn. 164.[7] "In

---

[6] General Statutes § 53a-29 (a) provides: "The court may sentence a person to a period of probation upon conviction of any crime, other than a class A felony, if it is of the opinion that: (1) Present or extended institutional confinement of the defendant is not necessary for the protection of the public; (2) the defendant is in need of guidance, training or assistance which, in his case, can be effectively administered through probation supervision; and (3) such disposition is not inconsistent with the ends of justice."

The statute concerning modifications of probation, General Statutes § 53a-30 (c), provides in relevant part: "At any time during the period of probation or conditional discharge, after hearing and for good cause shown, the court may modify or enlarge the conditions, whether originally imposed by the court under this section or otherwise . . . ."

[7] "Probation, like incarceration, is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty. . . . Probation is simply one point (or, more accurately, one set of points) on a continuum of possible punishments ranging from solitary confinement in a maximum security facility to a few hours of mandatory community service. A number of different options lie between those extremes . . . . To a greater or lesser degree, it is always true of probationers . . . that they do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions. . . . These restrictions are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not

keeping with the continuing supervision and authority given [to] the court under the statute, the court could modify or enlarge the conditions whether any such condition had been imposed at the time of sentencing or otherwise." (Internal quotation marks omitted.) Id., 169. "[I]n determining whether a condition of probation [is proper] a reviewing court should evaluate the condition imposed under our Adult Probation Act in the following context: The conditions must be reasonably related to the purposes of the [Probation] Act. Consideration of three factors is required to determine whether a reasonable relationship exists: (1) the purposes sought to be served by probation; (2) the extent to which constitutional rights enjoyed by law-abiding citizens should be accorded to probationers; and (3) the legitimate needs of law enforcement." (Internal quotation marks omitted.) Id., 170.

On appeal, the defendant claims that the court improperly allowed a special condition of probation to be added that was in violation of the terms of the plea agreement and in violation of his constitutional right to due process. The state argues that the defendant has failed to demonstrate that the condition of sex offender evaluation and treatment expressly was excluded from the terms of his probation. The state further maintains that the court did not abuse its discretion in granting the motion because the modification reasonably was related to the defendant's rehabilitation. We agree with the state.

The record does not support the defendant's argument that sex offender evaluation and treatment specifically were excluded in the plea agreement.[8] What is evident is that the defendant bargained for a sentence

---

harmed by the probationer's being at large." (Citation omitted; internal quotation marks omitted). *State* v. *Smith*, supra, 207 Conn. 165.

[8] See footnote 5.

that included a term of probation. "If he accepts the offer of probation, [the defendant] must accept all of the conditions. . . . In accepting probation, the defendant accepted at the time of sentencing the possibility that the terms of his probation could be modified or enlarged in the future in accordance with the statutes governing probation." (Citation omitted.) *State* v. *Thorp*, 57 Conn. App. 112, 121, 747 A.2d 537, cert. denied, 253 Conn. 913, 754 A.2d 162 (2000). Because the defendant accepted a sentence that included probation, modification of the terms of probation is not a violation of his constitutional rights, as long as the modified conditions reasonably relate to his rehabilitation and the preservation of the safety of the general public. See *State* v. *Pieger*, 240 Conn. 639, 647–49, 692 A.2d 1273 (1997). We therefore review the court's decision for an abuse of discretion.

At the hearing, Carter testified that he moved to modify the conditions on the basis of (1) guidelines adopted by the court support services division mandating that probationers with the defendant's profile participate in sex offender evaluation and treatment programs, (2) the defendant's convictions of risk of injury to children and (3) the findings of a sex offender evaluation undertaken at the request of the parole board.[9] That evaluation, dated October 3, 2003, classified the defendant's dangerousness rating as mild and his recidivism for commission of the same or similar offenses as high. The recommendation was that the defendant participate in sex offender treatment, accept full responsibility for his behavior and undergo a polygraph examination to determine the accuracy of his account of the underlying events.[10] Carter also testified that he had not made

---

[9] The defendant participated in the sex offender evaluation from August 8 through September 22, 2003, while he was incarcerated.

[10] The defendant insisted throughout the trial and appeal, and even during the sex offender evaluation, that his alcoholism caused him to behave in ways that led to the risk of injury charges, and he refused to acknowledge that there might be other causal factors.

arrangements for the defendant to begin psychological or psychiatric evaluations, as ordered by the court at sentencing, pending the outcome of his motion, because he wanted the defendant to be evaluated by "someone that had the professional expertise to make assessments on whether or not [the defendant] was a risk to reoffend as a sexual offender."

The defendant's trial attorney, Robert Lacobelle, testified that the defendant would not have agreed to sex offender evaluation and treatment as a condition of any plea and that the condition specifically was excluded from the plea agreement. When questioned by the court as to what would happen if the required psychological treatment indicated "some sort of an underlying sexual deviancy" and that the defendant needed to undergo sex offender treatment, Lacobelle vaguely suggested that "a judge that had indicated that based on his evaluation, he wasn't getting sex offender treatment, wouldn't have imposed it."[11]

---

[11] The following colloquy occurred:

"The Court: Psychological evaluation was a condition.

"[Defense Counsel]: It was.

"The Court: Right. And if the psychological evaluation came back indicating some sort of an underlying sexual deviancy, would that be a pathway to sexual offender treatment?

"[Defense Counsel]: I—I don't think with the court that sentenced him—I don't believe that—that to be the case. The—if Your Honor looks at the—the various subsections and what probation—what conditions can be imposed under . . . whatever the probation statute is—psychological evaluation is something different, at least in my mind, than sex offender treatment because they're specifically enumerated separately.

* * *

"[The Prosecutor]: Okay. It says psychological evaluation deemed appropriate, that [the defendant] submit to any treatment that may be indicated as a result of that evaluation. So, it's your understanding that if the evaluation came back saying he needs sex offender evaluation, that [the sentencing judge] wouldn't have said he's got to go to it?

"[Defense Counsel]: No, I don't think that's—that's what I said. . . . [I]f I said that, I misspoke. I'm saying that I don't—whatever the question was—I thought it was . . . if psychological testing said sex offender treatment was deemed necessary, do you think the judge would have imposed that? I didn't think that he—he would have because I was already told, my recollection that . . . he wasn't getting sex offender treatment.

The facts of the underlying risk of injury to a child conviction suggest that sex offender evaluation and treatment is a condition of probation that is reasonably related to the defendant's reformation.[12] The office of adult probation is charged with encouraging and overseeing the defendant's rehabilitation and with protecting the general public. Without a sex offender evaluation, it is not known what, if any, services the defendant would need to help him avoid reoffending and what steps would be necessary to protect the public. Furthermore, the parties do not dispute that the defendant agreed to a condition of probation that required him to undergo psychological or psychiatric evaluation and any treatment deemed necessary. Therefore, the court did not abuse its discretion in granting the state's motion because the condition comports with the purposes sought to be served by the defendant's

"[The Prosecutor]: [B]ut . . . hypothetically . . . he's ordered to go to the psych [evaluation], they say you got to go to sex offender treatment, we think that's needed, and then the motion came before the court. [The sentencing judge] wouldn't say yep, you [got] to go to it? That wasn't left open, that door wasn't left open based on what it says in this transcript?

"[Defense Counsel]: I think what it says in the—in the transcript, that those—if that's what eventually occurs . . . what would the judge have done? Again, I'd speculate, but you know, if you want me to speculate, I'd say that a judge that had indicated that based on his evaluation, he wasn't getting sex offender treatment, wouldn't have imposed it. May have imposed other conditions."

[12] We concluded in *State* v. *Boyle*, 102 Conn. App. 507, 925 A.2d 1172, cert. granted, 284 Conn. 908, 931 A.2d 266 (2007), that "for a condition of probation to be reasonably related to the defendant's rehabilitation . . . there must be a nexus between the condition of probation and the charge for which a defendant is serving probation. Such a requirement not only serves to rehabilitate a defendant on the basis of the crime committed but also protects the constitutional rights of the probationer." (Internal quotation marks omitted.) Id., 517–18.

In the present case, the defendant was charged with risk of injury to a child for his lewd and lascivious conduct toward a child in the parking lot of a church. The defendant also previously had pleaded guilty to risk of injury to a child for masturbating in front of three children. Therefore, a nexus exists between requiring sex offender evaluation and treatment and the crime for which the defendant is serving probation.

probation and the legitimate purpose of law enforcement in rehabilitating him and in protecting the community.

The judgment is affirmed.

In this opinion the other judges concurred.